UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:12-cv-00510-MOC-DSC

| | | |
|---|---|---|
| **CLARK MATERIAL HANDLING COMPANY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **TOYOTA MATERIAL HANDLING U.S.A., INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on: 1) Plaintiff's Motion for Treble Damages,

Attorneys' Fees and Interest (#230) and the associated response and reply briefs (##236, 238);

2) Defendant's Chapter 75 Brief (#227); and 3) Defendant's Post-trial Brief in Support of Rule

50 and Rule 59 Motions for Judgment as a Matter of Law, for New Trial, and/or Remittitur

(#234) and the associated response and reply briefs (##235, 239). The court held oral arguments

on all motions on May 13, 2015. Having considered the matter, the court enters the following

Order.

## I.    Introduction

In the interests of judicial economy, the Court declines to provide a thorough recitation of

the testimony, other evidence, and arguments presented at the seven-day trial before a jury in this

matter. In this action, Plaintiff Clark Material Handling Company ("Clark") brought claims

against Defendant Toyota Material Handling, U.S.A, Inc. ("Toyota") arising from a failed

business deal between Southeast Industrial Equipment ("SIE") and Clark. Plaintiff asserted

claims at trial for: 1) Unfair Competition – Violation of N.C. Gen. Stat. § 66-187.1 *et seq.*; 2)

Violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1 *et seq.;* 3) Tortious Interference with Contract; and 4) Tortious Interference with Prospective Economic Advantage. (See Clark's Trial Brief, (#201), p. 1). The court held a jury trial that began February 18, 2015 and ended with a jury verdict on February 27, 2015. The jury found that Toyota:

1) wrongfully interfered with a contractual right between Clark and SIE;
2) wrongfully interfered with a prospective economic advantage attained by Clark in its contract with SIE;
3) coerced SIE into terminating its dealer relationship with Clark and thereby stopping the purchase of forklifts manufactured by Clark; and
4) coerced SIE into ending its relationship with Clark by threatening to terminate SIE's Toyota dealership in Virginia.

See Jury Verdict (#228). The jury found, however, that Toyota did not unlawfully coerce SIE into ending its relationship with Clark by unfairly demanding that SIE issue a retraction or denial of the ForkLift Action article in which it was reported that SIE had become a Clark dealer. Id. The jury further found that Toyota's conduct proximately caused damage to Clark's business and that Clark had been injured by Toyota's conduct in the amount of $3,040,090. Id.

## II.    Plaintiff's Motion for Treble Damages, Attorneys' Fees, and Interest

Plaintiff argues that the jury's findings compel the conclusion that Toyota violated N.C. Gen. Stat. § 75–1.1 (the "UDTPA") and that consequently, Clark is entitled to treble damages, attorneys' fees, and pre- and post-judgment interest. As the question of whether Toyota violated the UDTPA is relevant to the issues of attorneys' fees and treble damages, the court will address that matter first.

### A. Toyota Violated the UDTPA

Section 75–1.1 the North Carolina General Statutes prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C.Gen.Stat. § 75–1.1(a). To prevail on a claim of unfair and deceptive trade practices, a plaintiff must show: (1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby." <u>First Atl. Mgmt. Corp. v. Dunlea Realty Co.</u>, 507 S.E.2d 56, 63 (N.C. Ct. App. 1998)). "The plaintiff must also establish it suffered actual injury as a proximate result of defendants' misrepresentations or unfair conduct." <u>Id.</u> (internal quotation and citation omitted). A practice is unfair "when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." <u>Marshall v. Miller</u>, 276 S.E.2d 397, 403 (N.C. 1981). A party's action is also unfair "when it engages in conduct which amounts to an inequitable assertion of its power or position." <u>McInerney v. Pinehurst Area Realty, Inc.</u>, 590 S.E.2d 313, 316-17 (N.C. Ct. App. 2004). "[C]oercive tactics are within the definition of unfair practices." <u>Wilder v. Squires</u>, 315 S.E.2d 63, 66 (N.C. Ct. App. 1984). While no precise definition of "unfair methods of competition" as used in this section exists,

> Unfair competition has been referred to in terms of conduct which a court of equity would consider unfair. Thus viewed, the fairness or unfairness of particular conduct is not an abstraction to be derived by logic. Rather, the fair or unfair nature of particular conduct is to be judged by viewing it against the background of actual human experience and by determining its intended and actual effects upon others.

<u>McDonald v. Scarboro</u>, 370 S.E.2d 680, 684 (N.C. Ct. App. 1988) (internal quotation marks omitted). The Fourth Circuit has noted that "the conduct sufficient to constitute an unfair or deceptive trade practice is a somewhat nebulous concept, and depends on the circumstances of

the particular case." <u>Colonial Trading, LLC v. Bassett Furniture Indus., Inc.</u>, 530 F. App'x 218, 226 (4th Cir. 2013) (citation and quotation marks omitted). However, only practices that involve "egregious or aggravating circumstances" are sufficient to violate the UDTPA. <u>S. Atl. Ltd. P'ship of Tennessee, L.P. v. Riese</u>, 284 F.3d 518, 535 (4th Cir. 2002) (citing <u>Dalton v. Camp</u>, 548 S.E.2d 704, 711 (N.C. 2001)).

Whether defendant committed the alleged unfair acts is a question of fact for the jury and whether the proven facts constitute an unfair or deceptive trade practice is a question of law for the court. <u>Forbes v. Par Ten Grp., Inc.</u>, 394 S.E.2d 643, 650-51 (N.C. Ct. App. 1990); <u>accord Edmondson v. Am. Motorcycle Ass'n, Inc.</u>, 7 F. App'x 136, 151 (4th Cir. 2001) ("Based upon the jury's findings of fact, the court must determine as a matter of law whether a defendant's conduct violates § 75–1.1.").

As applied here, the court has considered the jury's factual findings and concludes that Toyota's actions in this case constitute an unfair trade practice within the meaning of the statute. Here, ample evidence at trial revealed that Toyota coerced SIE into ending its dealer relationship with Clark by threatening to terminate SIE's Virginia territory if SIE did not drop the Clark line. <u>See, e.g.</u>, Trial Tr. at pp. 403-408 ("Q: So you say, is Virginia at risk? He [Jeff Rufener] says, you better start performing better in that territory, right? A [Cory Thorne]: Yes sir. Q: And that was a message received for you, right? A: It was."), 432-435 (Cory Thorne testimony regarding threats to Virginia and pressure from Toyota causing him to check himself into a hospital); 1177 (BJ Ferrell testimony regarding "substantial pressure" on Cory Thorne); Ex. 63 (edited affidavit of Cory Thorne); Ex. 47 (voicemail left for Scott Johnson by Cory Thorne describing "extremely confrontational" Toyota phone calls); Ex. 48 (draft termination letter); Ex. 50 (final termination

letter). Such actions interfered with the contractual rights of Clark and SIE, who had begun performing under the contract to further their new dealer relationship. Toyota's actions also interfered with Clark's prospective business and economic advantages derived from its dealer relationship with SIE. The court also finds that an inequitable assertion of power between Toyota and Clark played a role in these tortious and coercive actions; as noted at trial, SIE derives roughly 70% of its business in terms of gross income from Toyota sales, and has offered Toyota as its primary line of forklifts since at least 1991. (Trial Tr. at 331).

In the instant motions, Toyota continues to maintain that its conduct was not unfair within the meaning of the statute because it simply directed SIE to focus on its under-performing territory in Virginia rather than add a new brand to its dealership line. However, such argument was repeatedly made at trial and ultimately rejected by the jury. While Toyota is correct in asserting that the jury's factual findings do not immediately equate into a finding by this court that Toyota violated the UDTPA, the court agrees with the jury's findings that Toyota's actions here went above and beyond mere aggressive (but lawful) competition. Additionally, the court is unpersuaded by Toyota's argument that its conduct was not sufficiently egregious or aggravating to merit a finding of unfair conduct. Here, Toyota knew that SIE had entered into a contractual relationship with one of its national competitors and used its position as the primary supplier of SIE forklift products to coerce, intimidate, and intentionally interfere with the contract and future business relationship between SIE and Clark. The court finds such intentional efforts sufficiently aggravating to qualify as unfair within the meaning of the UDTPA.

Indeed, other courts have found conduct similar to that here to be unfair within the meaning of the act. See, e.g., Edmondson v. Am. Motorcycle Ass'n, Inc., 7 F. App'x 136, 152

(4th Cir. 2001) (unpublished) ("Defendants' conduct in interfering with [Plaintiff's] contractual rights and prospective contractual rights when he was attempting to carry on his new business constitutes unfair competitive practice in or affecting commerce within the purview of § 75–1.1."); Owens v. Pepsi Cola Bottling Co. of Hickory, N.C., 412 S.E.2d 636, 643 (N.C. 1992) ("Coercive conduct and inequitable assertions of power in a business context are prohibited by Chapter 75 of our General Statutes."); Roane-Barker v. Se. Hosp. Supply Corp., 392 S.E.2d 663, 670 (N.C. Ct. App. 1990) ("Because defendant's acts did amount to tortious interference with contract…the court did not err in finding an unfair or deceptive trade practice, [trebling] the jury verdict, awarding costs and awarding attorney's fees."); McDonald v. Scarboro, 370 S.E.2d 680, 683 (N.C. Ct. App. 1988) (holding that tortious interference with business or contractual relations can constitute violation of § 75-1.1); Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C., 620 S.E.2d 222, 229 (N.C. Ct. App. 2005) (tortious interference with prospective advantage supports UDTPA claim); Wilder v. Squires, 315 S.E.2d 63, 67 (N.C. Ct. App. 1984) (threatening not to pay plaintiff unless he agreed to a particular course of action was coercive and qualified as an unfair and deceptive trade practice). The court is thus satisfied that the first prong of the inquiry as to whether Defendant violated the UDTPA is satisfied. As to the second prong, the parties stipulated that Toyota's actions were "in or affecting commerce" within the meaning of the statute. See (#177 at ¶ 17).  Finally, the court agrees with the jury's finding that Clark has shown that it suffered injury as a proximate result of Toyota's actions, and accordingly, finds that the third prong is met.

Based on the jury's findings of fact, and pursuant to North Carolina law, there is extensive evidence showing that the actions of defendants were unfair, unethical, and coercive;

those actions proximately caused Clark's injury; those actions were of and affecting commerce;

and, thus, the court finds that these actions constitute unfair trade practices under N.C.G.S. § 75-

1.1.

### B. Treble Damages Pursuant to UDTPA

N.C. Gen. Stat. § 75-16 provides:

> If any person shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done, and if damages are assessed in such case *judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict.*

N.C. Gen. Stat. Ann. § 75-16 (emphasis added). "Thus, if unfair methods of competition or

unfair or deceptive acts or practices in or affecting commerce under G.S. 75-1.1 are found, the

court must treble the damages awarded." Kim v. Prof'l Bus. Brokers Ltd., 328 S.E.2d 296, 300

(N.C. Ct. App. 1985). In light of the court's analysis, a treble award of the UDTPA verdict

amount is required. See Walker v. Branch Banking and Trust Co., 515 S.E.2d 727 (N.C. Ct. App.

1999) ("Treble damages are assessed automatically upon a violation of N.C. Gen. Stat. §75-

1.1."); Bhatti v.Buckland, 400 S.E.2d 440, 442 (N.C. 1991) ("If a violation of Chapter 75 is

found, treble damages must be awarded."); Atl. Purchasers, Inc. v. Aircraft Sales, Inc., 705 F.2d

712, 715 (4th Cir. 1983) ("award of treble damages is a right of the successful plaintiff and is not

subject to judicial discretion"). The court notes that the damages for tortious interference claims

are subsumed in the UDTPA claims. See Volumetrics Med. Imaging, Inc. v. ATL Ultrasound,

Inc., No. 1:01CV182, 2003 WL 21650004, at *3 (M.D.N.C. July 10, 2003); Sunbelt Rentals, Inc.

v. Head & Engquist Equip., L.L.C., 620 S.E.2d 222, 230, n. 8 (N.C. Ct. App. 2005) (tortious

interference with prospective advantage claim "subsumed" in plaintiff's UDTPA claim). For the

reasons stated, the Court must treble the $3,040,090.00 award, resulting in an unfair and deceptive trade practices award of $9,120,270.00.

As to Toyota's argument that Clark is not entitled to treble damages because it failed to allege trebling as to the UDTPA claim in its Amended Complaint, the court notes that Clark's claim under the UDTPA specifically alleged trebling and incorporated Toyota's wrongful and unlawful conduct described in all preceding paragraphs of the Amended Complaint. See Amended Complaint (#24 at ¶¶ 39, 44). In support of its argument that a party cannot amend its pleading after the fact to add treble damages to a claim, Defendant cites Atl. Purchasers, Inc. v. Aircraft Sales, Inc., 705 F.2d 712, 714-15 (4th Cir. 1983), which the court finds to be easily distinguishable here. In that case, a jury awarded compensatory and punitive damages to the plaintiff on its fraud and breach of express warranty claims. After the jury verdict, the plaintiff sought treble damages and an award of attorneys' fees pursuant to the UDTPA. Plaintiff made no use of or reference to the UDTPA prior to that point in the litigation. The court denied Plaintiff's motion to amend its complaint and refused to treble the damages; the Fourth Circuit upheld the refusal to treble the damages. Unlike in Atl. Purchasers, where "[the plaintiff's] complaint gave no warning to [the defendant] that successful prosecution of the action could result in an award to [the plaintiff] of three times [its] actual damages," id. at 717, here, Defendants were made well aware in the Amended Complaint that Plaintiff sought treble damages under the UDTPA and that Toyota's allegedly tortious and coercive actions gave rise to the UDTPA violations. In addition, Federal Rule of Civil Procedure 54(c) provides that the Court "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleading." While "a party may not be entitled to [Rule 54(c)] relief if its conduct of the cause has improperly and

substantially prejudiced the other party," Albemarle Paper Co. v. Moody, 422 U.S. 405, 424, (U.S. 1975) (internal quotation marks omitted), the court does not find that Defendant was prejudiced by any failure on the part of Plaintiff to specifically detail each action alleged to be unfair under the UDTPA. The court has found that Toyota's acts amounted to coercion, inequitable assertion of power, and tortious interference with contract and prospective economic business advantage. All of these acts support a finding of a UDTPA violation and thus, treble damages. See Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond, Charlotte Branch, 80 F.3d 895, 902 (4th Cir. 1996) ("[Plaintiff] is entitled to any UTPA relief supported by the special master's findings of fact.").

Regarding Defendants' argument that any award of treble damages in this case would violate federal and state constitutional due process under the "void-for-vagueness" doctrine, the court finds that such argument has no merit. Generally, "a statute enacted by the General Assembly is presumed to be constitutional." Wayne Cnty. Citizens Ass'n for Better Tax Control v. Wayne Cnty. Bd. of Comm'rs, 399 S.E.2d 311, 314-15 (N.C. 1991). "A statute will not be declared unconstitutional unless this conclusion is so clear that no reasonable doubt can arise, or the statute cannot be upheld on any reasonable ground." Id. As noted by the North Carolina Supreme Court in In re Burrus, 169 S.E.2d 879 (N.C. 1969), aff'd, 403 U.S. 528 (1971):

> It is settled law that a statute may be void for vagueness and uncertainty. A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. Even so, impossible standards of statutory clarity are not required by the constitution. When the language of a statute provides an adequate warning as to the conduct it condemns and prescribes boundaries sufficiently distinct for judges and juries to interpret and administer it uniformly, constitutional requirements are fully met.

Id. at 888 (internal citations omitted). A statute must be examined in the light of the circumstances in each case, and the party contesting validity "has the burden of showing that the statute provides inadequate warning as to the conduct it governs or is incapable of uniform judicial administration." Ellis v. Ellis, 315 S.E.2d 526, 527 (N.C. Ct. App. 1984).

The court first notes that the North Carolina Court of Appeals examined the question of whether G.S. § 75-1.1 was unconstitutionally vague as applied to the defendant in Olivetti Corp. v. Ames Bus. Sys., Inc., 344 S.E.2d 82, 95 (N.C. Ct. App. 1986) aff'd in part, rev'd in part on other grounds, 356 S.E.2d 578 (N.C. 1987), and flatly rejected the defendant's void for vagueness argument. See id. (finding that where court found defendant had committed fraud, "[c]learly, the language of G.S. § 75–1.1 provides adequate notice that conduct constituting fraud is prohibited."). The court finds the same logic applies here. While Defendant contends that the UDTPA's prohibition of the "unfair" acts is vague and without any standards, the court disagrees. The contours of the meaning of "unfair" have been sharpened by over three decades of cases interpreting the meaning of the word as used in the UDTPA, particularly as applied to the facts of this case. See, e.g., Owens v. Pepsi Cola Bottling Co, 412 S.E. 2d 636 (N.C. 1992) (coercive conduct and inequitable assertions of power or position offend UDTPA); Edmonson v. American Motorcycle Ass'n, 7 F. App'x 136 (4th Cir. 2001) (threats to cancel contract to exclude competition a UDTPA violation); United Labs. v. Kuykendall, 370 S.E.2d 375 (N.C. 1988) (tortious interference with contract may support UDTPA claim); Sunbelt Rentals, Inc. v. Head & Engquist Equip., LLC, 620 S.E.2d. 222 (N.C. Ct. App. 2005) (tortious interference with prospective business advantage states UDTPA claim); Roane-Barker v. SE. Hospital Supply Corp., 392 S.E.2d 663 (N.C. Ct. App. 1990) (tortious interference with contract claim

"subsumed" in UDTPA claim); <u>McDonald v. Scarboro</u>, 370 S.E.2d 680, 683 (N.C. Ct. App. 1988) (tortious interference with business or contractual relations can constitute violation of § 75-1.1); <u>Wilder v. Squires</u>, 315 S.E.2d 63, 67 (N.C. Ct. App. 1984) ("coercive tactics are within the definition of unfair practices."). Accordingly, the court finds no reason to deny treble damages on the basis of Defendant's due process arguments.

### C. Attorneys' Fees

Plaintiff argues that an award of reasonable attorneys' fees is appropriate under both N.C. Gen. Stat. § 75-16.1 and N.C. Gen. Stat. § 66-188.

### 1. N.C. Gen Stat. § 75-16.1 (UDTPA)

The UDTPA provides the presiding judge with the discretion to award reasonable attorneys' fees to the prevailing party upon a finding that the defendant "willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit." N.C. Gen. Stat. § 75-16.1. "While a showing of willfulness seems not to be required in order to establish a violation of the Act with respect to ordinary damages, the quoted portion of the statute relating to attorney's fees does require such showing. An act or a failure to act is 'willfully' done if done voluntarily and intentionally with the view to doing injury to another." <u>Standing v. Midgett</u>, 850 F. Supp. 396, 404 (E.D.N.C. 1993). As for the first element—willfulness— the court finds that the evidence shows that Toyota intended to injure Clark and that Toyota's conduct was indeed "willful" within the meaning of the UDTPA's attorneys' fees provision. Here, the jury found that Toyota had knowledge of the Clark-SIE contract and coerced SIE into ending its relationship with Clark by threatening to terminate SIE's dealership in Virginia. Such interference and threats were clearly

intended to prevent SIE from continuing to pursue its contractual relationship with one of Toyota's competitors.  Indeed, intent is an element of tortious interference with contract, <u>see</u> <u>Blue Ridge Pub. Safety, Inc. v. Ashe</u>, 712 F. Supp. 2d 440, 447 (W.D.N.C. 2010) (citing North Carolina cases), and the jury verdict supports a finding that the wrongful interference with contract was a willfully unfair act. <u>See</u> <u>Irwin Indus. Tool Co. v. Worthington Cylinders</u> <u>Wisconsin, LLC</u>, 747 F. Supp. 2d 568, 590 (W.D.N.C. 2010) ("The jury's finding … satisfies Chapter 75's willfulness requirement for the recovery of attorneys' fees.").

As for the second element, the court also finds that Toyota refused to engage in any serious effort to resolve the matter. Both parties have submitted declarations of counsel describing the course of settlement negotiations prior to and during trial. Though the parties debate the extent of the full settlement offers and negotiations in this matter, the court notes that under both parties' characterizations of the facts, the parties did not talk in terms of dollar amounts until mediation in October 2014, at which point Clark made a demand of $10 million. After the court denied Defendant's motion for summary judgment, Clark made a demand of $15 million in late January 2015. Toyota apparently made an offer of $800,000 about one week before trial and then raised its offer to $1.5 million. Clark's demand of $15 million and Toyota's offer of $1.5 million were apparently on the table through closing arguments. On March 5, following trial and the jury's (pre-trebled) damages award of just over $3 million, Clark made a new settlement offer of $8.5 million. Toyota responded with a $2 million offer, which was apparently still on the table as of the oral arguments on the post-trial motions.

Here, while it is evident that the parties began discussing the possibility of settlement once trial began, by the time Defendant offered any money to settle, the parties had already

expended significant time and resources preparing for trial. This case was filed in August 2012, with an amended complaint filed in December 2012. Though Defendant argues that the settlement history in this case shows that it did not unwarrantedly refuse to settle, its best offer in this case—made after the jury verdict—is still less than the amount of damages awarded by the jury, putting aside Plaintiff's accrued costs and fees. See Irwin Indus. Tool Co. v. Worthington Cylinders Wisconsin, LLC, 747 F. Supp. 2d 568, 590 (W.D.N.C. 2010) (finding that where Defendant's best settlement offer was less than half of the jury's damage award, a finding of an unwarranted refusal to resolve the matter within the meaning of UDTPA was appropriate.). See also City of Riverside v. Rivera, 477 U.S. 561, 581 n. 11 (1986) (noting that in the context of attorneys' fees in a civil rights case, "petitioners could have avoided liability for the bulk of the attorney's fees for which they now find themselves liable by making a reasonable settlement offer in a timely manner. While petitioners did offer respondents $25,000 in settlement at the time the jury was deliberating the case, this offer was made, as the District Court noted, well after [respondents' counsel] had spent thousands of dollars on preparation for trial....") (internal quotation marks and citation omitted); United States v. D'Elegance Mgmt. Ltd., 217 F.3d 843 at *7 (4th Cir. 2000) (unpublished). The court thus finds that a reasonable award of attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1 is appropriate.

### 2. N.C. Gen Stat § 66-188

The court has also considered whether §66-188 provides an independent basis for assessing attorneys' fees in this matter and believes that it does. Under N.C. Gen. Stat. § 66-187.1, "[n]o supplier shall . . . [c]oerce a dealer into refusing to purchase equipment manufactured by another supplier." N.C. Gen. Stat. § 66-187.1(3). This statute further provides

that "any person who suffers monetary loss due to a violation of this Article . . . may bring a civil action to enjoin further violations and to recover damages sustained by him together with the costs of the suit, including a reasonable attorney's fee." N.C. Gen. Stat. § 66-188(b). There is no dispute that SIE is a "dealer" and both Toyota and Clark are "supplier[s]" under the statute. See N.C. Gen. Stat. § 66-180(4) (defining "dealer" as "a person engaged in the business of selling at retail farm, construction, utility or industrial, equipment, implements, machinery, attachments, outdoor power equipment, or repair parts"); N.C. Gen. Stat. § 66-180(9) (defining "supplier" as "a wholesaler, manufacturer, distributor, or any purchaser of assets or stock of any surviving corporation resulting from a merger or liquidation, any receiver or assignee, or any trustee of the original manufacturer, wholesaler, or distributor who enters into an agreement with a dealer").

The jury found that Toyota coerced SIE into terminating its dealer agreement with Clark, thus violating N.C. Gen. Stat. § 66-187.1(3). See Jury Verdict (#228). The jury also found that Clark suffered monetary loss due to Toyota's coercive conduct, and Clark is therefore entitled to recover damages and attorneys' fees in accordance with N.C. Gen. Stat. § 66-188(b).

### 3. Calculation of Attorneys' Fees

The determination of a reasonable fee award is a matter of discretion with the Court. See Robinson v. Equifax Info. Services, 560 F.3d 235, 243 (4th Cir. 2009). In determining the amount of reasonable attorney' fees to be awarded, this court typically applies the lodestar method, which calls for multiplying the number of reasonable hours expended by a reasonable hourly rate. Id. In deciding what constitutes a "reasonable" number of hours and rate, the Fourth Circuit has instructed that a district court's discretion should be guided by the following twelve factors:

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Id. at 243-44 (citing Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n. 28 (4th Cir.1978)). The party seeking an award of attorneys' fees has the burden of demonstrating a reasonable fee. Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990). As noted by the Fourth Circuit,

> [D]etermination of the hourly rate will generally be the critical inquiry in setting the reasonable fee, and the burden rests with the fee applicant to establish the reasonableness of a requested rate. In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award. Although the determination of a market rate in the legal profession is inherently problematic, as wide variations in skill and reputation render the usual laws of supply and demand largely inapplicable, the Court has nonetheless emphasized that market rate should guide the fee inquiry.

Id. (internal quotation marks and citations omitted). "[T]he community in which the court sits is the first place to look to in evaluating the prevailing market rate." Grissom v. The Mills Corp., 549 F.3d 313, 321 (4th Cir. 2008) (citing Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 179 (4th Cir. 1994)). "After calculating the lodestar figure, the court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones. Once the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." Grissom v. The Mills Corp., 549 F.3d 313, 321 (4th Cir. 2008) (internal quotation marks and citation omitted).

The court first considers the reasonable hours expended by reviewing the records submitted in support of the motion and excluding any hours that are redundant. See Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). This court has reviewed the records in support of the motion and finds that it requires more detail about the hours expended on tasks related to this litigation in order to make an informed decision about whether the nearly 4,500 hours requested are reasonable. The same finding applies to the reasonably hourly rate for the hours billed. As noted above, "the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." Plyler, 902 F.2d at 277. Here, Plaintiff has submitted an affidavit stating the rates billed for the attorneys and litigation support personnel at Smith Moore Leatherwood, the firm of lead litigation counsel in this case. The affidavit also indicates that Plaintiff paid a flat fee to the firm of Bartlit Beck Herman Palenchar & Scott for the purposes of trial. Two partners at Bartlit Beck and one paralegal worked on this case. The sole evidence provided to the court on the issue of the hourly rates was an affidavit from lead litigation counsel, which only states the rates at which members of her law firm are billed and the amount of the flat fee paid to Bartlit Beck. The court needs more information in order to make an informed decision on the issue of the appropriate amount of attorneys' fees. The court also notes that Plaintiff failed to fully address all of the Barber factors in connection with its motion. As such, the court will deny this portion of the Plaintiff's motion without prejudice and direct Plaintiff to submit additional affidavits, records, and information about the hours billed, the rate at which those hours are billed, and any other arguments about the factors to be considered for this court's lodestar analysis.

The court acknowledges Defendant's request for discovery on the issue of fees and will deny it at this time. However, Defendant shall be allowed to respond to any briefing and supporting affidavits filed by Plaintiff on this issue. As always, the parties are encouraged to meet and confer in order to resolve the issue of attorneys' fees.

### D.  Interest

Plaintiff also seeks pre- and post-judgment interest pursuant to N.C. Gen. Stat. § 24-5(b) and 28 U.S.C. § 1961(a).

### 1.  Pre-judgment interest

The decision whether to award prejudgment interest is a discretionary matter for the court. Marlen C. Robb & Son Boatyard & Marina, Inc. v. Vessel Bristol, 893 F. Supp. 526, 540 (E.D.N.C. 1994) (citing Coliseum Cartage Co., Inc. v. Rubbermaid Statesville, Inc., 975 F.2d 1022, 1026 (4th Cir. 1992)). Awarding prejudgment interest "serves the legitimate goals of making a party whole, or compensating the injured party for the loss of the use of money he would otherwise have had." Id. (citing EEOC v. Liggett & Myers, Inc., 690 F.2d 1072, 1074 (4th Cir. 1982)). Here, the court believes that awarding prejudgment interest serves the legitimate goal of compensating Plaintiff for the loss of profits it would have enjoyed through its relationship with SIE if not for Toyota's wrongful conduct.

N.C. Gen. Stat. § 24-5 provides, "[i]n an action other than contract, any portion of a money judgment designated by the fact finder as compensatory damages bears interest from the date the action is commenced until the judgment is satisfied." Id. Because this is a diversity case, the state interest rate of 8% mandated by N.C. Gen. Stat. § 24-1 will be used for calculating prejudgment interest. See Volumetrics Med. Imaging, Inc. v. ATL Ultrasound, Inc., No.

1:01CV182, 2003 WL 21650004, at *5 (M.D.N.C. July 10, 2003) (citing United States v. Dollar Rent A Car Sys., Inc., 712 F.2d 938, 940 (4th Cir. 1983)). Accordingly, upon entry of the judgment in this matter, prejudgment interest will be awarded as to the compensatory damages ($3,040,090), from August 14, 2012, until the judgment is satisfied. See id. (awarding prejudgment interest on the total amount of compensatory damages, not treble damages).

### 2. Post-judgment interest

Regarding post-judgment interest, 28 U.S.C. § 1961(a) provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." See Forest Sales Corp. v. Bedingfield, 881 F.2d 111, 113 (4th Cir. 1989) (holding that in diversity actions, post-judgment interest should be calculated at the federal rate). Section 1961(a) mandates that "[s]uch interest shall be calculated from the date of entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment." Id. The award of post-judgment interest applies to the entire trebled amount awarded under a UDTPA claim. See Volumetrics Med. 2003 WL 21650004, at *5 (citing Custom Molders, Inc. v. American Yard Prods., Inc., 463 S.E.2d 199, 203 (N.C. 1995)). Therefore, upon entry of the judgment in this case, Plaintiff shall be awarded post-judgment interest at the appropriate rate specified by 28 U.S.C. § 1961(a) until the judgment is satisfied.

### III. Defendant's Rule 50 and Rule 59 Motions for Judgment as a Matter of Law, for New Trial, and/or Remittitur

#### A. Rule 59 Motion for Remittitur and New Trial

Pursuant to Fed. R. Civ. P. 59(a), Defendants move for a new trial and remittitur. Rule 59(a) provides that the trial court may grant a new trial to any party on all or some of the issues

-18-

if: "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Cline v. Wal–Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir.1998) (quoting Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 594 (4th Cir.1996)). The decision to grant or deny a motion for a new trial is a matter within the court's discretion. Atlas, 99 F.3d at 594. "On a Rule 59 motion for a new trial addressing compensatory damages, the trial court must weigh the evidence and consider the credibility of the witnesses to determine whether the verdict was against the clear weight of the evidence or was based upon evidence that was false." Knussman v. Maryland, 272 F.3d 625, 647 (4th Cir. 2001). Remittitur, used in connection with Fed. R. Civ. P. 59(a), is the established method by which a trial court can review a jury award for excessiveness and order a new trial unless the plaintiff accepts a reduction in an excessive jury award. Atlas, 99 F.3d at 593. "Indeed, if a court finds that a jury award is excessive, it is the court's duty to require a remittitur or order a new trial." Id. (citing Linn v. United Plant Guard Workers, Local 114, 383 U.S. 53, 65–66 (1966)). In deciding whether a jury's award is either excessive or inadequate, a federal court in a diversity case looks to substantive state law. Stebbins v. Clark, 5 F. App'x 196, 201 (4th Cir. 2001).

The court first addresses Defendant's arguments as to a new trial. Defendant argues that a new trial is necessary, at least on the issue of damages, because the court made several legal and evidentiary errors at trial. Defendant contends that it was improper for the court to determine as a matter of law that a contract existed and to allow Clark to present evidence about Toyota's ownership plans for dealers without succession plans and about a partially competing line.

Defendant also claims that the court improperly allowed to the jury to hear evidence in the form of an unsigned declaration, as well as damages projections and testimony from Clark's expert. While the court recognizes that Defendant disagrees with some of its rulings, the court does not find that a new trial is warranted. The court, in its discretion, does not believe that the verdict is against the clear weight of the evidence, based upon false evidence, or that it causes a miscarriage of justice. Defendant has not presented any arguments to this court that were not previously considered at trial and ultimately rejected. Defendant has indicated its intent to bring the court's alleged errors to the attention of the Fourth Circuit Court of Appeals, as is its right. At this time, however, the court does not believe that any of these alleged errors merit a new trial and will thus deny Defendant's Rule 59 motion for a new trial.

Defendant also argues that remitter is required because the damages evidence presented at trial was wholly speculative and not based on sound evidence. The court disagrees. "[D]amages may not be determined by mere speculation or guess." W. Insulation, LP v. Moore, 242 F. App'x 112, 119 (4th Cir. 2007) (quoting Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563 (1931)). "The party seeking damages bears the burden of proving them in a manner that allows the fact-finder to calculate the amount of damages to a reasonable certainty. While the claiming party must present relevant data providing a basis for a reasonable estimate, proof to an absolute mathematical certainty is not required." State Properties, LLC v. Ray, 574 S.E.2d 180, 188 (N.C. Ct. App. 2002) (internal citation omitted).

Defendant argues that there was no basis for the court to allow damages beyond the one-year, terminable upon 30 days-notice, non-renewing contract. Specifically, Defendant argues that Clark's expert made damages projections that were based on flawed data and that the damages

claim was unsupported by substantial evidence. On both counts, the court disagrees. Here, Clark's damages expert Seth Palatnik testified that he based his damages projections on: 1) SIE's business/sales plan regarding the SIE-Clark relationship (Ex. 19) (Trial Tr. 757:16-19); 2) G&W's expectations of Clark sales (the incumbent Clark dealer at the time) (Trial Tr. 759:3-6); 3) historical Clark financial data (Trial Tr. 759:10-760:15, 761:13-18, 763:15-22); and 4) forklift industry standards (Trial Tr. 780:9-12). SIE President Cory Thorne testified that he believed that his estimates about sales projections of Clark units in the business plan (which Clark's expert used in his damages calculations) were reasonable at the time he made them. (Trial Tr. at 365-67). Though Mr. Thorne also made contradictory statements about the plausibility of these figures on cross-examination, (Trial Tr. 470-72), the issue of credibility was a matter properly before the jury based on all of Mr. Thorne's testimony at trial. There was also significant evidence at trial indicating that relationships between forklift dealers and manufacturers are typically long-term, even despite short-term written agreements. See, e.g., (Trial Tr. 619-20; 134; 367; 1253-54). The jury, after hearing evidence from both parties' experts, did not fully embrace the damages projections offered by either side, but instead returned a damages verdict reflecting lost profits extending into the future for a period longer than that promoted by Toyota's expert, but shorter than that advanced by Clark's expert. The court believes that Plaintiff presented relevant data that provided a reasonable basis for a damages estimate to the jury and that the jury clearly put some thought and calculation into its final damage award of $3,040,090. Having considered the evidence and testimony about damages in this case, the court does not believe that the jury verdict was excessive. Defendant's motion for remittitur is therefore denied.

### B. Rule 50 Motion for Judgment as a Matter of Law

Pursuant to Fed. R. Civ. P. 50(b), Defendants move for judgment as a matter of law on each of Plaintiff's claims. A jury verdict will withstand a Rule 50(b) motion unless no substantial evidence supports the jury verdict. Stamathis v. Flying J, Inc., 389 F.3d 429, 436 (4th Cir. 2004). A Rule 50 motion for judgment as a matter of law is reviewed under the same standard as that applied in reviewing a motion for summary judgment; the court must view the evidence in the light most favorable to Plaintiff and draw all reasonable inferences in its favor. See Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644–45 (4th Cir. 2002). "The question is whether a jury, viewing the evidence in the light most favorable to [plaintiff], could have properly reached the conclusion reached by this jury." Id. (quoting Benesh v. Amphenol Corp. (In re Wildewood Litigation), 52 F.3d 499, 502 (4th Cir. 1995). A verdict may not be set aside unless the court "determines that the only conclusion a reasonable trier of fact could draw from the evidence is in favor of the moving party." Tools USA and Equip. Co. v. Champ Frame Straightening Equip., Inc., 87 F.3d 654, 656–57 (4th Cir. 1996) (quotation omitted).

Defendant argues that Plaintiff's claim for tortious interference with contract fails as a matter of law because Defendant's actions were justified. Defendant argues that it had a legitimate business interest in SIE not joining Clark and that it wanted SIE to meet its sales targets pursuant to the Toyota-SIE dealer agreement. Again, Defendant makes arguments before the court that were squarely before the jury but ultimately rejected. Defendant correctly argues that in defending a claim for tortious interference with contract, a defendant's interference with the contracts of others is privileged where he acts with a legitimate business purpose. See, e.g., Peoples Sec. Life Ins. Co. v. Hooks, 367 S.E.2d 647, 650 (N.C. 1988) ("If the defendant's only

motive is a malicious wish to injure the plaintiff, his actions are not justified. If, however, the defendant is acting for a legitimate business purpose, his actions are privileged.") (citation omitted). However, as Defendant itself cites in its brief, "competition in business constitutes justifiable interference in another's business relations and is not actionable so long as it is carried on in furtherance of one's own interests and *by means that are lawful*." Id. (emphasis added). Additionally, the Restatement that Defendant relies upon in support of its motion for judgment as a matter of law on the tortious interference claims reads in full:

> One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if:
>
>> (a) the relation concerns a matter involved in the competition between the actor and the other and
>>
>> (b) *the actor does not employ wrongful means* and
>>
>> (c) his action does not create or continue an unlawful restraint of trade and
>>
>> (d) his purpose is at least in part to advance his interest in competing with the other.

Restatement (Second) of Torts § 768 (1979) (emphasis added).

The question of justification is an issue for the jury. United Labs., Inc. v. Kuykendall, 370 S.E.2d 375, 388 (N.C. 1988) ("it is a jury determination as to whether defendant … interfered with the contracts without justification."). Here, the court instructed the jury (without objection from Toyota) as follows: "if you find that Toyota coerced SIE into refusing to purchase forklifts from Clark, then Toyota's interference would not be legally justified." (Trial Tr. 1513:22-25.)[1] The jury found that Toyota coerced SIE into ending its dealer relationship with

---

[1] The court's full instruction on the issue of justification was as follows:

Clark. Coercion is unlawful, and therefore cannot serve as a basis for justification. Here, there is ample evidence supporting the jury's determination that Toyota's interference was wrongful and not justified. See, e.g. Trial Tr. at 403-08; 432-33 (Cory Thorne testifying about his conversations with Toyota representatives regarding the Clark deal). Defendant's motion for judgment as a matter of law on the tortious interference with contract claim fails.

Defendant argues that Plaintiff's claim for tortious interference with prospective economic advantage also fails its actions were justified and because the claim became duplicative when the court determined that a contract existed. To the extent Toyota argues that its interference was justified, for the same reasons articulated above, the court is unpersuaded. Regarding whether the claim became duplicative once the court determined that a contract existed, the court explained at trial its reasoning for not believing the claims to be duplicative and sees no reason to change its ruling. See Trial Tr. 1384:18-23 (the court stating in response to

---

Now on the question of justification. Interference with a contract is justified if it is motivated by a legitimate business purpose, such as whether the plaintiff and the defendant are competitors. Said another way, interference is considered justified when a non-outsider interferes with a contract to protect a legitimate business interest. A non-outsider is one who is not a party to the terminated contract, yet has a legitimate business interest of his own in the subject matter of the contract. Competition in business constitutes justifiable interference in another's business relations and is not actionable so long as it is carried on in furtherance of one's own interests and by means that are lawful. Conduct that is based solely on a competitive purpose is a legitimate business purpose. Conduct that is based solely on an anti-competitive purpose is not a legitimate business purpose. Where the circumstances surrounding a wrongful interference claim involve a business competitor, the party asserting the claim (Clark) must show that the competitor (Toyota) acted with malice or a bad motive. One who intentionally causes a third person not to continue an existing contract terminable at will does not interfere improperly with the other's relation if his purpose is at least in part to advance his interest in competing with the other, but only if such acts are done with legal justification, that is, they are in conformity with the law or they are done pursuant to a contractual right. Acts done in violation of law or contrary to a valid contractual right are never justified. In North Carolina it is unlawful for a manufacturer to coerce as opposed to persuade a dealer into refusing to purchase industrial equipment, such as forklifts, from another manufacturer. Therefore, if you find that Toyota coerced SIE into refusing to purchase forklifts from Clark, then Toyota's interference would not be legally justified. Likewise, if you find that Toyota merely persuaded SIE, then such interference would be legally justified.

(Trial Tr. at 1512-14).

-24-

Defendant's argument that the economic advantage claim should not go to the jury, "the contract may well be limited by the jury at a year, where economic advantage could be longer than what would be under the contract if they find that. So in this particular case, if we had a contract which went out into the future, you're right, that could be redundant. In this case that's not necessarily redundant.").

Generally, to maintain an action for tortious interference with prospective advantage, a plaintiff must show that the defendant induced a third party to refrain from entering into a contract with the plaintiff without justification and that the contract would have ensued but for the defendant's interference. Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC, 762 S.E.2d 316, 324 (N.C. Ct. App. 2014). However, as the Supreme Court of North Carolina has explained, "an action for tortious interference with prospective economic advantage may be based on conduct which prevents the making of contracts." Owens v. Pepsi Cola Bottling Co. of Hickory, N.C., 330 N.C. 666, 680, 412 S.E.2d 636, 644 (1992). Here, the court does not believe that Plaintiff's claim for tortious interference with prospective economic advantage is duplicative of the claim for tortious interference with contract because the two claims are not mutually exclusive. Here, though Clark and SIE entered a contract with a term of only one year, Clark introduced ample credible evidence at trial showing that SIE and Clark anticipated their business relationship extending well beyond the one-year term articulated in the contract. For example, the SIE Business Plan submitted to Clark (Exhibit 19) contemplated a long-term relationship; Cory Thorne testified that he anticipated a long-term relationship (Tr. 367:14-16); the average duration of a Clark dealership is 26.5 years (Exhibit 410); Michael Sabbagh, President of G&W, testified that he would have remained a Clark dealer beyond his

actual six-year term had MCFA not offered him the CAT brand (Tr. 1336:8-1); and forklift manufacturer-dealer relationships are generally long-term due to the significant capital investment required (Tr. 619:16-620:7). Thus, Toyota's interference with the one year contract is distinct from its interference with the anticipated long-term relationship between SIE and Clark. Defendant's motion for judgment as a matter of law on the tortious interference with prospective economic advantage claim fails.

Finally, Defendant argues that the unlawful coercion and deceptive trade practices claims fail because "it was not improper for Toyota to desire SIE to comply with its Toyota contract, and to not want SIE to affiliate with Clark." (Def. Post-Trial Brief (#234), p. 2). Defendant's reiterations of its arguments before the jury which were ultimately rejected are not grounds for disturbing the jury's verdict. N.C. Gen. Stat. § 66-187.1(3) prohibits a supplier from "[c]oerc[ing] a dealer into refusing to purchase equipment manufactured by another supplier." An essential element of coercion is a wrongful act or threat. Wilder v. Squires, 315 S.E.2d 63, 66 (N.C. App. 1984) (citing Link v. Link, 179 S.E.2d 697, 705 (N.C. 1971). Coercive tactics support a finding of an unfair practice within the meaning of the UDTPA. Id. At trial, Plaintiff presented abundant evidence that Toyota coerced SIE into cancelling its relationship with Clark in violation of the statute. See supra at II.A. Substantial evidence supports the jury's finding that Toyota coerced SIE into terminating its Clark relationship by threatening SIE's Virginia territory. See, e.g., Trial Tr. at 403-08; 432-45; Ex. 63. As explained above in the discussion of Plaintiff's UDTPA claims, the jury's finding of coercion, as well as its finding of unlawful interference, support a finding by the court of a UDTPA violation. See Owens v. Pepsi Cola Bottling Co. of Hickory, N.C., 412 S.E.2d 636, 643 (N.C. 1992) ("Coercive conduct and

inequitable assertions of power in a business context are prohibited by Chapter 75 of our General Statutes."); <u>Roane-Barker v. Se. Hosp. Supply Corp.</u>, 392 S.E.2d 663, 670 (N.C. App. 1990) ("Because defendant's acts did amount to tortious interference with contract…the court did not err in finding an unfair or deceptive trade practice.")

In conclusion, viewing the evidence in the light most favorable to Plaintiff, a reasonable trier of fact could have found precisely as the jury found here. Because the court finds that substantial evidence supports the jury verdict, Defendant's Rule 50(b) motion will be denied. <u>See</u> <u>Stamathis v. Flying J, Inc.</u>, 389 F.3d 429, 436 (4th Cir. 2004).

# ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Treble Damages, Attorneys' Fees and Interest (#230) is **GRANTED in part and DENIED in part, without prejudice** as explained herein. Specifically, as to treble damages and interest, the compensatory damage award of $3,040,090 shall be trebled and Plaintiff shall be awarded both pre-judgment and post-judgment interest upon entry of the judgment in this case. As to attorneys' fees, within 14 days of the date of this Order, Plaintiff shall file documentation required for an award of fees in this district, which includes lodestar information as to hours billed and the billing attorney's ordinary hourly rate and experience, an affidavit from an outside practitioner or statistical data supporting that rate in this particular area of law in this community, and additional briefing regarding the factors appropriate for this court's consideration of the requested fee amount. Defendant shall be allowed 14 days to respond. There will be no reply. The court encourages the parties to meet and confer on the matter of attorneys' fees in an attempt to resolve the issue.

**IT IS FURTHER ORDERED THAT** Defendant's Rule 50 and Rule 59 Motions for Judgment as a Matter of Law, for New Trial, and/or Remittitur (#234) are **DENIED**.

Signed: June 3, 2015

Max O. Cogburn Jr.
United States District Judge